Good morning, Your Honors. May it please the Court, Counsel. My name is Troy Glander, and I do represent AT&T, Your Honors, this morning on this matter involving fiber optic cables. And I would like to reserve for rebuttal three minutes, if you would, Deputy Dodds, please. As I think you, Your Honors, know, this is a case where Jackson Utilities was excavating and caused damage to AT&T's underground fiber optic facilities in Montana. The District Court found that AT&T's actions contributed to the event and applied a contributory negligence scheme to assess 35 percent responsibility to AT&T and 65 percent responsibility to Jackson Utilities. And so we're really here on two points. The first is that the Court should reverse the District Court's decisions applying the contributory negligence scheme and render judgment in favor of AT&T for the, quote, entire cost of the repair at issue, because that is what Montana law clearly and unambiguously requires. And then with that done, the Court should reverse the District Court's decision to deny the award of prejudgment interest since the Court's decision was based solely on the premise that prejudgment interest is not available where contributory negligence applies. As for the first issue, the Montana Dig Law clearly and unambiguously states that an excavator that violates section 69-4-503 is liable, is, quote, liable to the owner of the underground facility for the entire cost of the repair of the facility, close quote. Jackson Utilities in this case was found to have violated 69-4-503. Thus, pursuant to the statute, Jackson Utilities is liable to AT&T for, quote, the entire cost of the repair of the facilities. The District Court determined that those entire costs are $237,471, but because of course the award of 35 percent contributory negligence, that leaves a difference of about $83,000 that is really in dispute here on that issue. Jackson Utilities successfully argued that GIOMBRA should be applied here. And in the GIOMBRA case, the Supreme Court of Montana determined that principles of contributory negligence may be applied only in the, quote, absence of an express statutory provision to the contrary. So Jackson Utilities successfully argued that the, quote, entire cost of repair language that is in the statute is not directly contrary to the application of the principles of contributory negligence. But the legislature, of course, could have said many things other than entire costs. The legislature could have said proportionate responsibility. Instead, the legislature specifically chose to use the words entire cost. The Court in GIOMBRA, although it says in the absence of any express statutory provision to the contrary, it never says exactly what that language has to be. It never says that the legislature specifically has to say whether contributory negligence applies. Just any language will do the trick. And in this case, clearly, the legislature mandating that the entire cost of repair is directly contrary to the concept that it should be proportioned amongst various parties. Counsel, is there any difference between an excavator who makes no attempt to obtain the information and an excavator who does make an attempt to obtain the information, but then, for various and sundry reasons, misreads the markings or goes forward in a manner that was negligent, but they did attempt to obtain the information and apply the information? I think the direct answer would be whether it is contained within 69.4503, because that's the statute. The statute says that if you violate that specific statute, then you have to pay the entire cost. There could be many other ways that an excavator could be negligent, which is I think what you're getting to, that you would not be in violation of that statute. But the legislature says if you violate that specific statute, then you, in fact, are liable for the entire cost. Maybe a different way or complementary way to inquire is to ask you, what's required to obtain information? What's required to obtain what? Obtain information. What do you have to do? I'm not sure what you mean by obtaining information. About the utilities. About the utilities. About the location. You're supposed to go in and obtain information. Okay. Because the idea is, of course, if you obtain the information, then you're going to be informed. Right. But if you go in and you obtain information, are your duties discharged, so to speak, your requirement in terms of folding it back into the statute? No. No. 694-503 creates continuing obligations, not simply obtaining information. So directly answering the first part of that question, you obtain information by a couple of things. One, you call in a one-call ticket or a DIG ticket. So you call that in and then, of course . . . Jackson Utilities did the DIG ticket, correct? They absolutely did, Your Honor. There is a DIG ticket that was in evidence in this case. And then there's other ways that you can obtain information by, obviously, just using your eyes, looking around. In this case, AT&T had permanent markers that were in the area that the court found, obviously, was part of the evidence that there were facilities that were buried there, in addition to the temporary markers that the court found evidence that existed out there at the time that Jackson Utilities saw what they determined was confusing and decided to excavate anyway. Can I ask you, how does Statute 694-505-1A apply here? What does that mean? If any underground facility is damaged by an excavator who has failed to obtain information as to its location as provided in 694-503, then the excavator is liable to the owner. Right. So that's saying you have to do what's complied with 694-503, obtain that information as . . . Who has failed to obtain information. Right. So, for example . . . They . . . they . . . they . . . they did their thing. They . . . No. The court specifically found. There's no dispute. The court specifically found they did not obtain the information that they were supposed to obtain in connection with 503. They violated that statute. So their call ticket was . . . your point, then, is the call ticket, when they called in the ticket, that was insufficient. No, no, no. Calling . . . Then I'm missing what you're saying. The statute says if you fail to obtain the information . . . let me get . . . if it's damaged by an underground excavator who has failed to obtain information as to its location. So not just obtaining information, but obtaining information as to its location, meaning where specifically is it in the ground. You can do that by calling in a ticket and then getting it specifically marked. But then, of course, 694-503 has continuing obligations that you have to maintain those markings. Okay. So hold on. Wait a minute. So they called in the information . . . they called in and said this is where we're going to be digging. Right? Correct. Okay. And AT&T came out, for some reason or other, didn't understand the call. Is that right? And they placed . . . That's part of court's findings. And they placed . . . well, you know, we have to live with what the district court said. Sure. And as a result, they placed the new markers at a different location. Is that right? Am I understanding that right? The court found they placed new markers in a different location and in this location before the damage was done. I'm talking about in response to this call-in. Right. Is that right? Not within 24 hours. Or 48 hours, I'm sorry. That's the issue. The issue is the court found that they didn't do it within 48 hours. But didn't do what within 48 hours? Marking that specific area within 48 hours. It's an area . . . AT&T. . . . of 8,000 feet. AT&T. Correct. So AT&T had 48 hours within which to do the marking? Right. Of that specific area. And the digging was within that 48-hour period? No, no, no. The digging wasn't until like two weeks later. And the Jackson people definitely messed up. They didn't follow the markings the way they should have. But . . . That's what the court found. Right. But that means they were negligent. Does it mean they violated this statute? When you're saying that obtaining information is an ongoing responsibility that requires them to not miss what's marked. The court specifically found they violated the statute and nobody has appealed that. That is not an issue for the court. That's . . . Violated which statute? 69-4-503. . . . 503. Mm-hmm. So . . . But the court also was saying there's contributory negligence here and I'm not going to follow the entire cost portion of it. So wasn't the court sort of trying to come to some resolution here that established this isn't the classic case of an excavator not doing anything right and it's not the classic case of the utility complying with their requirements too? I think this is a very classic case in that utility or excavators often do something but there still ends up being damage. And the legislature has very specific reasons why it needs to make sure that the excavator who's the entity that's out there and who's the only one that's in control at the time that it decides to move forward in violation of the statute is responsible. These utilities ultimately, I mean, we're talking about gas, we're talking about sewer, public electricity. You know, individuals that are working out there get killed when the excavator doesn't do things that they're supposed to do. People that rely on these utilities are out of service when the excavators don't do what they're supposed to do. And government owns . . . And if the digging had happened within two days and AT&T had not complied with their version of what their responsibility was under the statute, the exact same thing could have happened. Well, they can't dig within two days. They'd be in violation of the statute there as well. They have to wait until at least that time period passes. And then even if they wait and they see that there's no markings out there for a temporary basis, the statute says if you see the permanent markers that are out there that the court found, they found, that you can't just keep blowing through and doing your excavation because these utilities, which are often owned ultimately by municipalities as well and or they're owned by entities that are controlled by the Public Utility Commission that sets rates to protect the rate payers, those are all the interests that the legislature has taken into consideration in deciding we are mandating that entire cost be followed. The court obviously said I'm not going to follow that law. I'm going to change it. I'm going to apply contributory negligence and that's obviously not the role of the court. The court is supposed to follow what the legislature decided was going to be the rule that would be followed here and there's good reasons why that rule is in place. Do you want to save remaining time? Sure, Your Honor. Thank you. This is yours. May it please the Court. My name is Patrick Sullivan. I represent Jackson Utilities LLC in this case. A few general comments I'd like to make at the outset. The Montana Dig Law imposes very important obligations on both the excavator and the facility owner and it's not difficult to understand that in order to adequately safeguard underground facilities, it is necessary for both the excavator and the facility owner to meet their statutory obligations. For instance, the excavator has to rely on the facility owner in at least two respects. Number one, the facility owner must meet the statutory obligation to timely mark the facility as required in the statute. The reason for that is so that the excavator can plan the work and know where to go and  Number two, it's very important, of course, that the facility owner accurately mark their facilities and the statute requires that markings must be made within 18 inches of the lateral dimensions of the system or the underground facility. So in this case, after a five-day trial, a lot of evidence, transcripts, the Court really has virtually or hardly has any evidence in front of it, but the trial court came to a decision. I don't think either party was entirely happy with that. Both parties argued that the other side was primarily at fault here. The judge, the trial judge, of course, came to an allocation of 60, 65, 35 and AT&T doesn't like that. So now what the argument is is that, well, the Court should not have applied contributory negligence principles, relying on this basically one word in the statute, this entire cost language. Mr. Gleiner did state the correct rule of law that in Montana, contributory negligence applies in any negligence per se claim unless the statute expressly declares to the contrary. And the district court, of course, ruled on a motion to amend that AT&T filed, soundly rejecting the arguments that we've heard here today, in a short and concise order, basically restating, obviously the order speaks for itself, but the Court said there's nothing in the DIG law that states that contributory negligence is not a defense that applies in a claim under the DIG law statutes. Well, that's a legal conclusion, correct? I believe it's a legal conclusion and I should point out that . . . And so then we juxtapose that against the language, the entire cost of the repair, which suggests that you wouldn't have a sharing arrangement. So is it your view you have to take that somehow the Montana general negligence law is infused into the statute or overrides that language? I think you have to read the statute into Montana law and vice versa. I should point out the district judge here, Brian Morris, was an author of some of these decisions. He's a former Supreme Court justice. Clearly, the Olson case, which they have cited in their brief, they claim that the trial court failed to follow Olson even though Judge Morris was the author of that decision. And he participated in some of these other decisions dealing with the impact of contributory negligence. But the cases are clear in stating that in Montana, contributory negligence applies unless there are very unusual circumstances that do not apply here. You know, I could use other examples, too. I mean, let's just say, for instance, that a statute says an aggrieved party is entitled to recover all damages resulting from another party's breach of a duty of care. All damages. Does that mean that the contributory negligence defense does not apply? Certainly not. I don't see much of a difference between saying all damages or entire damages or entire costs. There's certainly nothing in the case law in Montana that would accept that strained interpretation of any kind of a damage provision like this. So I think it would be really unfair and nonsensical, I think would be a better word, to have a rule where in this type of scenario, the facility owner has no legal responsibility. So in other words, if you've got the excavator going out and you've got the facility owner going out, they work hand in hand. I mean, in real world, it's not like they don't know each other. They're dealing with each other on a daily basis or on a regular basis in most occasions. And to say that, well, if the excavator makes a mistake, fine, you give them 100 percent of the damages. But if the facility owner makes a mistake, it doesn't matter. How did their mistake affect what your client did? How did it? How did their mistake, not doing it within? You know, I'll try to summarize that, because it could take a long, long time, and that's We don't have five days, okay? Yeah, yeah. Well, first of all, they didn't mark the area, okay, and there's a dispute, a trial about it. I mean, not only did they not mark the area within two days, they didn't mark it at all. What was confusing here is that there were some prior markings from a prior job that was done before this particular job. Now, keep in mind, this is not the only ticket that was called into this job. There were many, many, many tickets called in by various people, including Jackson Utilities. So there were some flags in this area, but not the Jackson Utilities flags. And compounding the problem is that one of the other utility owners, CenturyLink, they received a ticket, and they marked their route, which went along pretty much in the same route that the AT line went on, but then they stopped marking, too, okay? Kind of a strange coincidence, but there's a section between, referred to as Anderson Road and Highline Road, as you move north, and there's a damaged location incurred in between those two roads. Neither utility marked in between there. There were some old flags, though, that were there, okay? There's other issues involved, too, including there's some issues about whether AT&T went out and moved their marks after the fact and all that. Nothing about that is on appeal here. But what it turns out to be is that when you're, an excavator is excavating a route of like 4,000 feet, you know, that's pretty long distance, okay? It's not unusual to be excavating in close proximity to an existing route where the underground facility is. They can be within two feet, okay? That's very common. They call it parallel plowing. So you might be going up a highway, they have to rely on these flags showing the underground facility, and if they're off, then obviously, you know, there can be some real problems here. But what AT&T was doing, they didn't like the fact that they had to mark 4,000 feet of this, so they just made a determination as to where they thought the Jackson Utilities excavation route was going to be. So they only went out and marked perceived conflict points, which is not proper, and it's not the way that the other utility did it, and it's not the way that other utilities do it. The way that they should have done it, they should have just gone out every five or ten feet and put a flag down showing their entire route, not just saying, well, we don't think you're going to be plowing there, so don't worry about it, okay? That's one thing. So then the reason that's important is that when Jackson Utilities gets up to this area, they don't see any of their flags, and they say, well, that's not unusual because they only marked areas of perceived conflict, so you might go 50 or 100 feet before seeing any flag. And so when they're plowing in an area, they have to assume that the facility owner adequately marked the location of the facility, but in this case, it didn't happen. There is testimony from the engineer who was just an observer who said that he was there, an eyewitness, didn't have any idea that there was a utility that was struck. This is a non-Jackson Utilities employee, he's employed by the project engineer, who's basically watching the thing get, the plow gets stuck in the ground, the operators don't know. I appreciate your giving us your closing argument from the trial, but regardless, the trial judge found that your client violated 503. You don't agree with it, but he did find it, which means that he found that your client failed to obtain the necessary information, correct? Well, I don't think that he, you know, I mean, I understand the question about what has failed to obtain the necessary information mean. I don't think he went in and said that because he did, we did get the ticket, okay? And so I think that's really what the statute is getting at, if you don't call in the ticket. There is another requirement. You didn't appeal that finding. What's that? You didn't appeal the finding that your client violated 503. No, we did not appeal that, and they're not appealing that they were negligent. They just said it in the reply brief, okay? So, you know, it is what it is. I mean, the court's findings are pretty strong in stating that the parties were negligent. I think it'd be kind of silly to try to appeal something like that. But so, you know, we're willing to accept it. We didn't agree with it, but, you know, that's the way it goes. So, but here we are, and the, but really it gets down to, you know, is this, is comparative negligence applicable here? I think if you took that out of the arena on the statute, again, it would give the facility owner the right to act lackadaisical as a matter of law because if they find out that the excavator has done something wrong, it would allow them to just sit back and watch the whole story play out and say, uh-huh, there's no contributing notorious negligence here. Again, I think that's a, for lack of a better word, let's just say it's a poor argument, okay? So I'd like to point out, too, they filed a reply brief. Of course, the retreat owner gets to respond to it, and they go into all kinds of these factual arguments, factual issues. There's really no evidence in the record. They've provided nothing with their initial brief. AT&T has provided a few documents, selective documents that they've attached to their supplemental excerpts, but they talk about placing of white flags and who did this. Again, we're talking about factual issues. We went a whole week at trial dealing with all of this. We haven't had an opportunity to respond to what they're saying. We think their allegations are irrelevant, but the obligation that they had is to go out and mark the area based on the information in the ticket. And what they're saying is that, well, there was no white flags, and they say that the engineer didn't stake until later on. Well, the engineer was not putting in white flags. The engineer was putting in the stakes. The engineer is the party that identifies the route. The excavator only does the excavation work. Excavators are not engineers. They're not scientists. They're not the general contractors. They're kind of on the low level of the scale out there, and they're just doing what they're told to be done. They have to call in the ticket. The ticket identifies the area. AT&T gets that. They have a legal obligation to take that ticket and locate in response to that ticket. And if they don't know or don't understand, it's incumbent upon them to contact the excavator to sort out any discrepancies that there may be. So they made a lot of mistakes. They didn't even read the ticket right. So they understood the ticket to be meaning that it only applied to a different area, and the trial judge rejected that argument as well. They say that, well, Jackson Utilities, they were the only people on site, and AT&T did not have an opportunity to come up with this last clear chance doctrine, which has no application in Montana at this point, or this exception to this case law that is addressed in Olson about workplace safety, worker safety issues, and they say AT&T had no ability to prevent this. Well, certainly they did. I mean, they have their locator. He may not have been an eyewitness like the engineer was, but he's on site. He knows where people are going. He knows what the route is. He has plenty of opportunity to communicate and to do what he thinks is necessary, and so, you know, these are issues that they're trying to raise here without any factual support in the record. You may want to wrap it up because . . . unless you have a question. Yeah. I just want to make sure I understood your . . . when the judge made his conclusions of law, you're correct that he did find that he did hold that you violated 503, but in the performance . . . in the way the work was performed . . . But I understood him to find in paragraph 14 of his conclusions of law that you had properly notified . . . you'd satisfied the notification obligation under 503. Isn't that right? Yeah. Yeah. He . . . I think the judge . . . the judge says, yeah, you did everything right, Jackson Utilities. You . . . you . . . you know, you've submitted the ticket. You did all that right. But the way he criticized Jackson Utilities is because there were some confusing flags out there. Yes. That's right. That's right. Okay. And that's . . . okay. At this point, we're not appealing that. I mean, certainly we're not appealing that. Right. Okay. Okay. But Jackson Utilities' response would have been the reason why there were confusing flags out there is because that's the way they marked them. Okay. Thank you. All right. Thanks, Kevin. Thank you.  I guess really adjusting . . . addressing Justice Paez's last comment and question, that language in the statute, failed to obtain information as to its location. That's not calling in a ticket. That's finding out where the cable exists so you don't damage it. When you read 503, it doesn't just say you call in a ticket. It says you have to . . . there's a lot of things that you have to do to find out where the actual location of the cable is so you do not hit it. Then, Justice . . . I'm sorry. Well, you just have to go to the district court's findings or conclusions. J.U. called in a valid ticket, the J.U. ticket, to the One Call Notification Center on July 17th. This ticket complied with the requirements of Montana Code 69-4-503 in that it described the location of work and provided notice to facility owners of the impending work. Right. But he does not say, he does not find that they found, that they complied with the statute to find the location of the facility. They only complied to the extent they called in a ticket. If you read 503, they have continuing obligations that he goes on to talk about that they violated, which ultimately led them to not finding the, quote, location as provided in 69-4-503. That's what the statute says that they did not do. Well, I understood his later conclusions is that both of you were negligent. No doubt about that. He found that we were contributory and negligent, but he does not find that they found the location, because obviously if they had found the location of the cable, they wouldn't have hit it. We all know they didn't find the location of the cable, and he found that they didn't find it by, in violation of 503. He only found that they called in a ticket, which is not finding the location of the cable. The other, one of the first points that he made was that Jackson Utilities, there's burdens and duties on both sides, and there absolutely are, but you have to look at how it's laid out in the statute. It's first their duty and obligation to call in the ticket, then it's AT&T's duty and obligation to respond, and then, regardless of whether they respond accurately, there's still ongoing duties and obligations of Jackson Utilities. Again, staying with 505, because we've been looking at 505-1A, 505-1A clearly says if you violate that 503, then you're liable for the entire cost, but then it goes on in subsection 3 and says, but if AT&T ultimately didn't properly respond, then Jackson Utilities would be off the hook, unless caused by Jackson Utilities negligence. So it provides, it recognizes that AT&T has duties, and it recognizes then that it basically provides the excavator a get-out-of-jail-free card, as long as they're not negligent, but the court did, in fact, find that they were negligent, so that get-out-of-jail-free card doesn't apply here. So then you're still left with where you start off in the very first sentence of the statute, that they're liable for the entire cost. Nothing changes that, because that section of the provision doesn't apply. And even further, it's caused by their negligence, and of course, in the order itself and in the order for denying the amendment of the judgment, the court specifically says that it was Jackson Utilities that caused the damage. Nowhere did he find that AT&T caused the damage. He specifically says multiple times, Jackson Utilities caused the damage. Ultimately, AT&T was contributory only to the extent and the way that it had marked in some areas, which he addresses as the factual issues, which Justice Lansky pointed out, it's really not an issue for the court today, so I won't spend your time on it. Anything else, Your Honors? I think not. Thank you very much. Thanks for your patience in waiting until the end of the calendar. We thank both counsel for both the briefing and argument. The case just argued of AT&T is submitted and we're adjourned for today. Thank you.
judges: McKeown, Paez, Lasnik